IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CR-00292-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DARRELL LATEEF WATSON, | ) | |
| | ) | |
| Defendant. | ) | |

On March 8, 2021, Darrell Lateef Watson ("Watson" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 40]. On August 8, 2021, Watson, through counsel, filed a memorandum in support of his motion for compassionate release [D.E. 43]. On August 23, 2021, the United States responded in opposition [D.E. 47]. As explained below, the court denies Watson's motion.

I.

On May 21, 2020, pursuant to a written plea agreement, Watson pleaded guilty to conspiracy to distribute and possess with the intent to distribute a quantity of 4-fluroisobutyryl fentanyl. See [D.E. 1, 19, 21]. On October 6, 2020, the court held Watson's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See PSR [D.E. 28]; [D.E. 31]. The court calculated Watson's offense level to be 23, his criminal history category to be I, and his advisory guideline range to be 46 to 57 months' imprisonment. See PSR ¶ 55. After considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Watson to 48 months' imprisonment. See [D.E. 34] 2. Watson did not appeal.

On March 8, 2021, Watson moved for compassionate release [D.E. 40, 43]. The government opposes the motion [D.E. 47].

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine "that the defendant is not a danger to the safety of any other person or the community." Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements issued by the" United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with "a serious deterioration in physical and mental health" due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another

2

extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states that

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

   (C) Family Circumstances.—

   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

3

"an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), cert. denied, No. 21-5624, 2021 WL 4733616 (U.S. Oct. 12, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "U.S.S.G. § 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (cleaned up). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 283–84. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section

---

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (emphasis omitted).

4

3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–09 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Watson seeks compassionate release. See [D.E. 40, 43]. Watson asserts he unsuccessfully sought administrative relief before filing his motion for compassionate release. See [D.E. 40] 3; [D.E. 43] 3–4. The government argues (and provided exhibits in support) that the BOP has no record of Watson pursuing administrative relief and asks the court to deny Watson's motion on that ground. See [D.E. 47] 15–16; [D.E. 47-2, 47-3, 47-4]. Watson provided no evidence, other than the assertions in his motion and memorandum, indicating he sought administrative relief. Thus, it appears Watson did not exhaust his administrative remedies and the court denies Watson's motion for compassionate release. See, e.g., United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020); cf. United States v. Muhammed, No. 20-7520, 2021 WL 4888393, at *2–4 (4th Cir. 2021).

Alternatively, even if Watson did exhaust his administrative remedies, the court denies Watson's motion on the merits. Watson seeks compassionate release pursuant to section 3582(c)(1)(A). In support, Watson cites the COVID-19 pandemic, his health conditions, his supportive family, and his release plan. See [D.E. 68, 71]. The "medical condition of the defendant" policy statement requires that the defendant be "suffering from a serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Watson argues that his obesity, hypertension, sleep apnea, mixed hypercholesterolemia and hypertriglyceridemia, and stress related trauma place him at heightened

risk of serious infection from COVID-19. See [D.E. 40] 1, 9–10; [D.E. 43] 2, 5. But Watson has already contracted and recovered from COVID-19, thus obtaining natural antibodies. See [D.E. 43] 6; see also [D.E. 47] 18–19. And besides vaguely arguing that his hypertension is "poorly controlled," [D.E. 40] 9, Watson does not argue that he is unable to manage his conditions while incarcerated or that the BOP is failing to treat Watson for his health conditions.

Watson is vaccinated against COVID-19. See [D.E. 43] 2, 6; [D.E. 44] 11–12; cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); see also United States v. Baeza-Vargas, No. No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *3–4 (D. Ariz. Apr. 5, 2021) (collecting cases showing the "growing consensus" of district courts denying compassionate release when an inmate is vaccinated against COVID-19). Having natural antibodies and being fully vaccinated reduces Watson's risk of serious reinfection. Accordingly, reducing Watson's sentence is inconsistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic and Watson's health conditions are extraordinary and compelling reasons under section 3582(c)(1)(A).[2] Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory

---

[2] The court notes Watson's argument that the specific conditions at FCI Fort Dix constitute an extraordinary and compelling reason justifying compassionate release. See [D.E. 40] 1–2, 4–9. Although the court assumes that FCI Fort Dix suffered a wave of COVID-19 infections as Watson describes, zero inmates and only five staff at FCI Fort Dix currently have COVID-19. See http://www.bop.gov/coronavirus (last visited Nov. 2, 2021). Thus, the specific conditions at FCI Fort Dix do not currently constitute an extraordinary and compelling reason for compassionate release.

6

role, and its extensive and professional efforts to curtail the virus's spread."). At the same time, Watson's natural antibodies and vaccination diminishes the weight of that assumption. Cf. Broadfield, 5 F.4th at 803; Baeza-Vargas, 2021 WL 1250349, at *2–4. Regardless, the section 3553(a) factors counsel against reducing Watson's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Watson is 40 years old and is incarcerated for conspiracy to distribute and possess with the intent to distribute a quantity of 4-fluroisobutyryl fentanyl. See PSR ¶¶ 1–3. Over several months in 2017, Watson helped his co-conspirators ship pills containing 4-fluroisobutyryl fentanyl. See id. ¶¶ 11–16. When Watson shipped the packages at the direction of a co-conspirator, Watson knew the packages contained illegal drugs. See id. ¶ 13. Watson was responsible for shipping more than 5,300 pills containing 621.79 grams of 4-fluroisobutyryl fentanyl. See id. Watson also is a recidivist with convictions for theft by deception, false information, and conspiracy to commit witness tampering. See id. ¶¶ 21–23. Watson has incurred no disciplinary infractions while incarcerated and regularly attends religious services. See [D.E. 40] 12.

The court has also considered Watson's potential exposure to COVID-19, medical conditions, rehabilitative efforts,[3] and release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court recognizes Watson has a supportive family who would help him if released and that Watson could continue to run his catering business. See [D.E. 40] 16–17; [D.E. 43] 7. Having considered the entire record, the steps

---

[3] The court notes and takes into account that it sentenced Watson in October 2020 during the COVID-19 pandemic, and thus many vocational and educational courses may be currently unavailable to him. See [D.E. 40] 16.

7

that the BOP has taken to address COVID-19 and to treat Watson, the section 3553(a) factors, Watson's arguments, the government's persuasive response, and the need to punish Watson for his serious criminal behavior, to incapacitate Watson, to promote respect for the law, to deter others, and to protect society, the court denies Watson's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Watson's request for home confinement, see [D.E. 40] 1, 16–17, Watson seeks relief under the CARES Act. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1–2 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent Watson requests that the court merely recommend home confinement to the BOP, the court declines. Thus, the court dismisses Watson's request for home confinement.

II.

In sum, the court DENIES defendant's motions for compassionate release [D.E. 40, 43] and DISMISSES defendant's request for home confinement.

SO ORDERED. This 3 day of November, 2021.

JAMES C. DEVER III
United States District Judge

**8**